UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ERICA B., <br><br> Plaintiff, <br><br> v. <br><br> LELAND DUDEK, Acting Commissioner of Social Security Administration, <br><br> Defendant. | Case No. 2:23-cv-10823-SP <br><br><br> **MEMORANDUM OPINION AND ORDER** |

### I.
### INTRODUCTION

On December 27, 2023, plaintiff Erica B. filed a complaint against defendant, the Commissioner of the Social Security Administration ("Commissioner"), seeking a review of a denial of an application for a period of disability and disability insurance benefits ("DIB") and a denial of an application for supplemental security income ("SSI"). The parties have fully briefed the issue in dispute, and the court deems the matter suitable for adjudication without oral argument.

Plaintiff presents one disputed issue for decision, whether the Administrative Law Judge ("ALJ") failed to properly evaluate plaintiff's subjective symptom testimony.

1

Plaintiff's Memorandum in Support of the Complaint ("P. Mem.") at 3-6; *see* Defendant's Brief ("D. Mem.") at 2-7.

Having carefully studied the parties' memoranda, the Administrative Record ("AR"), and the decision of the ALJ, the court concludes that, as detailed herein, the ALJ properly evaluated plaintiff's subjective symptoms. Consequently, the court affirms the decision of the Commissioner denying benefits.

## II.
## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff was 31 years old on her alleged disability onset date, February 28, 2018. AR at 49, 69. She completed high school and has past relevant work as a waitress. AR at 45, 361.

On March 26, 2021, plaintiff filed applications for a period of disability and DIB and for SSI due to: bipolar disorder, depressed without psychotic features; and major depressive disorder. AR at 50, 70. The Commissioner denied plaintiff's applications initially and upon reconsideration, after which plaintiff filed a request for a hearing. AR at 49-67, 69-78, 90-113, 115-38, 158-59.

On April 25, 2023, plaintiff, represented by counsel, appeared and testified at a hearing before the ALJ. AR at 33-58. The ALJ also heard testimony from Shelly Cochlin, a vocational expert. AR at 33, 44-47. On May 10, 2023, the ALJ denied plaintiff's claims for benefits. AR at 17-27.

Applying the well-known five-step sequential evaluation process, the ALJ found, at step one, plaintiff had not engaged in substantial gainful activity since February 28, 2018, the alleged onset date. AR at 19.

At step two, the ALJ found plaintiff suffers the from the severe impairments of depression, anxiety, and attention deficit hyperactivity disorder ("ADHD"). AR at 20.

At step three, the ALJ found plaintiff's impairments whether individually or in combination did not meet or medically equal one of the listed impairments set forth in 20 C.F.R. part 404, Subpart P, Appendix 1. *Id.*

The ALJ then assessed plaintiff's residual functional capacity ("RFC"), and determined plaintiff could perform a full range of work at all exertional levels, but with the non-exertional limitations that plaintiff could: perform simple routine tasks; not interact with the public; have occasional interaction with coworkers; not perform production rate or pace work, such as work on an assembly line; and make occasional, simple work-related decisions. AR at 21.

The ALJ found, at step four, that plaintiff was not able to perform her past relevant work as a waitress. AR at 26.

At step five, the ALJ found there were jobs that existed in significant numbers in the national economy which plaintiff could perform, including laundry worker, garment bagger, and marker II. AR at 26-27.

Plaintiff filed a timely request for review of the ALJ's decision, which the Appeals Council denied. AR at 1-3. The ALJ's decision stands as the final decision of the Commissioner.

## III.
## **STANDARD OF REVIEW**

This court is empowered to review decisions by the Commissioner to deny benefits. 42 U.S.C. § 405(g). The findings and decision of the Social Security Administration must be upheld if they are free of legal error and supported by substantial evidence. *Mayes v. Massanari*, 276 F.3d 453, 458-59 (9th Cir. 2001) (as amended). But if the court determines the ALJ's findings are based on legal error or are not supported by substantial evidence in the record, the court may reject the findings and set aside the decision to deny benefits. *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001); *Tonapetyan v. Halter*, 242 F.3d 1144, 1147 (9th Cir. 2001).

"Substantial evidence is more than a mere scintilla, but less than a preponderance." *Aukland*, 257 F.3d at 1035. Substantial evidence is such "relevant evidence which a reasonable person might accept as adequate to support a conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998); *Mayes*, 276 F.3d at 459. To determine whether

substantial evidence supports the ALJ's finding, the reviewing court must review the administrative record as a whole, "weighing both the evidence that supports and the evidence that detracts from the ALJ's conclusion." *Mayes*, 276 F.3d at 459.  The ALJ's decision "cannot be affirmed simply by isolating a specific quantum of supporting evidence." *Aukland*, 257 F.3d at 1035 (internal quotation marks and citation omitted).  If the evidence can reasonably support either affirming or reversing the ALJ's decision, the reviewing court "may not substitute its judgment for that of the ALJ." *Id.* (internal quotation marks and citation omitted).

## IV.
## **DISCUSSION**

Plaintiff argues the ALJ failed to provide specific, clear and convincing reasons for rejecting the severity of plaintiff's subjective complaints.  P. Mem. at 5.  In particular, plaintiff argues the ALJ relied unduly on the opinion of a consultative examiner and the fact plaintiff was not taking psychiatric medications.  *Id.*

The court looks to Social Security Ruling ("SSR") 16-3p for guidance on evaluating plaintiff's alleged symptoms.  In adopting SSR 16-3p, the Social Security Administration sought to "clarify that subjective symptom evaluation is not an examination of an individual's character."  SSR 16-3p, 2017 WL 5180304, at *2 (Oct. 25, 2017).

> [SSR 16-3p] makes clear what our precedent already required: that assessments of an individual's testimony by an ALJ are designed to evaluate the intensity and persistence of symptoms after the ALJ finds that the individual has a medically determinable impairment(s) that could reasonably be expected to produce those symptoms, and not to delve into wide-ranging scrutiny of the claimant's character and apparent truthfulness.

*Trevizo v. Berryhill*, 871 F.3d 664, 678 n.5 (9th Cir. 2017) (cleaned up).

To evaluate a claimant's symptom testimony, the ALJ engages in a two-step analysis.  *Christine G. v. Saul*, 402 F. Supp. 3d 913, 921 (C.D. Cal. 2019) (citing *Trevizo,*

871 F.3d at 678). First, the ALJ must determine whether the claimant produced objective medical evidence of an underlying impairment that could reasonably be expected to produce the symptoms alleged. *Id*. Second, if the claimant satisfies the first step and there is no evidence of malingering, the ALJ must evaluate the intensity and persistence of the claimant's symptoms and determine the extent to which they limit her ability to perform work-related activities. *Id*.

In assessing intensity and persistence, the ALJ may consider: the claimant's daily activities; the location, duration, frequency, and intensity of the symptoms; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of medication taken to alleviate the symptoms; other treatment received; other measures used to relieve the symptoms; and other factors concerning the claimant's functional limitations and restrictions due to the symptoms. *Id*. (citing 20 C.F.R. § 416.929); SSR 16-3p at *4; *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996). To reject the claimant's subjective symptom statements at step two, the ALJ must provide "specific, clear, and convincing" reasons, supported by substantial evidence in the record, for doing so. *Burrell v. Colvin*, 775 F.3d 1133, 1136-37 (9th Cir. 2014); *Smolen*, 80 F.3d at 1281, 1283-84.

Here, at the first step, the ALJ found plaintiff's medically determinable impairments could reasonably be expected to cause plaintiff's alleged symptoms. AR at 22. At the second step, because the ALJ did not find any evidence of malingering, the ALJ was required to provide clear and convincing reasons for discounting plaintiff's testimony. The ALJ found plaintiff's "statements concerning the intensity, persistence, and limiting effects" of plaintiff's "symptoms are not entirely consistent with the medical evidence and other evidence in the record." *Id.*

**Plaintiff's Conservative and Inconsistent Treatment**

The ALJ first indicated plaintiff's reports about the severity of her symptoms were not credible because she received inconsistent and more conservative treatment than might be expected given her complaints. AR at 22-23; *see Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007) ("[E]vidence of 'conservative treatment' is sufficient to discount a

claimant's testimony regarding severity of an impairment."). The ALJ points to plaintiff's lack of emergency room visits or psychiatric hospitalizations, as well as her inconsistent use of psychiatric medication. AR at 22-23.

It is not clear why the ALJ would have expected hospitalization given plaintiff's testimony, and the mere lack of psychiatric hospitalization is insufficient to constitute conservative treatment. *See Tammy L. O. v. Comm'r*, 2018 WL 3090196, at *13 (D. Or. June 20, 2018) (the "mere fact that a claimant has not been admitted to a hospital on an inpatient basis" does not mean that a claimant received conservative treatment). Additionally, plaintiff's medical records indicate plaintiff was prescribed a number of psychiatric medications including sertraline (Zoloft), escitalopram (Lexapro), quetiapine (Seroquel), aripiprazole (Abilify), lurasidone (Latuda), ziprasidone (Geodon), bupropion (Wellbutrin), and dextroamphetamine-amphetamine (Adderall). AR at 499, 538, 666, 677. "The Ninth Circuit and district courts alike have recognized that prescription of psychiatric medication for mental health impairments . . . is not indicative of conservative treatment." *Joseph S. v. O'Malley*, 2024 WL 418632, at *13 (S.D. Cal. Feb. 5, 2024) (collecting cases); *see also Drawn v. Berryhill*, 728 F. App'x 637, 642 (9th Cir. 2018). Indeed, had plaintiff regularly taken all of her psychiatric medications as prescribed, there would be no question such treatment is not conservative.

But plaintiff was in fact irregular in her compliance with her psychiatric medications, which the ALJ determined further undermined her subjective statements. *See* AR at 23. Although a lack of compliance with a course of treatment may be a reason to discount the severity of an individual's symptoms, the ALJ must "consider[] possible reasons he or she may not comply with treatment or seek treatment consistent with the degree of his or her complaints." SSR 16-3p, 2017 WL 5180304, at *9 (Oct. 25, 2017); *see Carmickle v. Comm'r*, 533 F.3d 1155, 1162 (9th Cir. 2008) (citing *Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007)) ("[A]lthough a conservative course of treatment can undermine allegations of debilitating pain, such fact is not a proper basis for rejecting the claimant's credibility where the claimant has a good reason for not seeking more

6

aggressive treatment."). An acceptable reason for failing to comply with a prescribed course of medication may include experiencing side effects. *See Dejalenda S. v. O'Malley*, 2024 WL 2293010, at *7 (E.D. Wash. May 21, 2024) (holding ALJ gave undue weight to plaintiff's cessation of psychiatric medication when the ALJ failed to consider "whether medication side-effects, Plaintiff's mental disorders, or her relocations contributed to [plaintiff's] stopping psychotropic medication.").

Here, plaintiff testified she had not been taking psychiatric medication since 2020 because some of the psychiatric medications caused her to "hallucinate and feel very suicidal." AR at 41. Medical records show that after plaintiff reported experiencing suicidal ideation with her medication it was changed, but plaintiff then reported her depressive symptoms were worsening and she had difficulty waking in the mornings. AR at 538. Plaintiff also reported difficulty in scheduling an appointment with mental health providers because many were not accepting new patients due to the COVID-19 pandemic. AR at 314. Moreover, among plaintiff's central claims for disability is her inability to focus and concentrate. AR at 22, 41. It would not be unreasonable to assume plaintiff's difficulty in remaining compliant and in pursuit of effective psychiatric medication could be related to her inability to concentrate or follow directions. *See Garrison v. Colvin*, 759 F.3d 995, 1018 n.24 (9th Cir. 2014) ("we do not punish the mentally ill for occasionally going off their medication when the record affords compelling reason to view such departures from prescribed treatment as part of claimant's underlying mental afflictions.") (citation omitted). Additionally, plaintiff sought treatment for her inability to concentrate relatively recently, as evidence by a December 2022 prescription for Adderall. AR at 677.

In sum, the administrative record as a whole does not support the ALJ's conclusion that plaintiff received treatment inconsistent with her complaints. Accordingly, this was not a clear and convincing reason to discount her testimony.

//

**Inconsistencies With the Objective Medical Record**

Second, the ALJ reasoned plaintiff's allegations were inconsistent with the objective medical evidence. AR at 26. Specifically, the ALJ points to several records of largely normal mental status examinations and medical findings that plaintiff retained "essentially normal" memory capabilities and "normal judgment and insight." AR at 23-24; *see e.g.,* AR at 513, 668-69, 699, 705, 755. "When objective medical evidence in the record is *inconsistent* with the claimant's subjective testimony, the ALJ may indeed weigh it as undercutting such testimony." *Smartt v. Kijakazi*, 53 F.4th 489, 498 (9th Cir. 2022).

The court agrees that the objective medical evidence is inconsistent with plaintiff's subjective testimony. Plaintiff testified she is unable to work because she loses focus and often has difficulty articulating her thoughts. AR at 22. But plaintiff's physicians have noted plaintiff's "intact judgement and insight, intact comprehension, [and] normal speech" multiple times. AR at 668, 699, 720, 743. An examination of the record also reveals statements such as "during all four testing sessions, [plaintiff] worked hard and learned and followed the instructions quickly," had "coherent" thought processes, as well as cooperative behavior, good insight, and good judgment. AR at 720, 743, 755, 759. Such statements are inconsistent with plaintiff's testimony, particularly her more extreme statements that she has difficulty with simple tasks and "gets so lost in [her] thoughts" that she urinates in her pants. AR at 307-08; P. Mem. at 4. While plaintiff may disagree with the ALJ's interpretation of the record, the ALJ adequately described several inconsistencies between plaintiff's testimony and her medical records. Accordingly, the ALJ properly found the objective medical evidence undercuts her testimony.

**Inconsistencies With Activities of Daily Living**

Lastly, the ALJ reasoned plaintiff's subjective symptom testimony was inconsistent with her activities of daily living. AR at 20-21, 23. Engaging in daily activities that are incompatible with the severity of symptoms alleged can support an adverse credibility determination. *See, e.g., Orn*, 495 F.3d at 639; *Batson v. Comm'r of*

1 *Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004).  At the same time, plaintiff does not need to be "utterly incapacitated," and "the mere fact a [plaintiff] has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability." *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989); *see Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001).

      Here, plaintiff claimed she had difficulty understanding and following instructions and recalling information, and reported taking hours to complete even the simplest of tasks.  AR at 21, 41-42, 307-13.  Plaintiff also claimed she had difficulty appearing in public spaces and has severe anxiety around others.  AR at 311.  Yet plaintiff also testified she shares custody of her three children and makes medical decisions for them jointly with their father.  AR at 39-40.  Plaintiff reports taking her mother to her dialysis appointments, performing chores around the home, and having a pet dog.  AR at 308.  Plaintiff is able to cook simple meals, go grocery shopping, manage her own finances, and drive.  AR at 309-10.  Plaintiff also reports being able to watch movies and play board games with her children, getting her nails done in a public salon, attend a meeting at a police station regarding her children's absences from school, and take her children to the park.  AR at 311, 468, 542, 546.  The ALJ found plaintiff's claim she had severe difficulty with simple tasks and understanding and following directions inconsistent with plaintiff's ability to prepare meals, manage her finances and drive.  AR at 20.  The ALJ also noted it was inconsistent for plaintiff to testify she has severe social anxiety when she is able to go to the grocery store multiple times a week.  AR at 21.  The court also pointed out an apparent contradiction between plaintiff telling a physician she has no outside activities and a visit to the emergency room with an injury from playing baseball.  AR at 23.  The court finds these inconsistencies between plaintiff's activities and her claimed symptoms are a clear and convincing reason for discounting plaintiff's testimony.

In sum, the ALJ gave two clear and convincing reasons for discounting plaintiff's testimony regarding the severity of her symptoms, namely, inconsistencies with the medical evidence and her activities of daily living. Therefore, the ALJ did not err in this analysis.

## V.
## **CONCLUSION**

IT IS THEREFORE ORDERED that Judgment shall be entered AFFIRMING the decision of the Commissioner denying benefits, and dismissing the complaint with prejudice.

Dated: March 30, 2025

_____

SHERI PYM
United States Magistrate Judge